**RICHMAN LAW GROUP**
Kim E. Richman
krichman@richmanlawgroup.com
8 West 126th Street
New York, NY 10027
(718) 705-4579 (t)
(718) 228-8522 (f)
Email: krichman@richmanlawgroup.com

**EGGNATZ PASCUCCI, P.A.**
Joshua H. Eggnatz, Esq.
7450 Griffin Road, Suite 230
Davie, Florida 33314
Telephone: (954) 889-3359
Email:  JEggnatz@JusticeEarned.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMY LIVINGSTONE, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>COLGATE-PALMOLIVE COMPANY, a Delaware Corporation,<br><br>       Defendant. | Case No. _19-4643_____<br><br>**COMPLAINT**<br><br><u>**CLASS ACTION**</u><br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Amy Livingstone, on behalf of herself and all others similarly situated, alleges, with personal knowledge as to her own actions, and upon information and belief as to those of others, the following against Defendant Colgate-Palmolive Company:

## INTRODUCTION

1.      In recent years, consumers have found themselves developing increasing sensitivities and reactions to harsh chemicals used in everyday household and personal-care products. Consumers must, and do, rely on manufacturers of household and personal-care products either to avoid using known allergens and irritants in their products, or to reveal to consumers the presence of allergens or irritants. One such known and pervasive harsh ingredients is methylisothiazolinone ("MI").

2.      Defendant Colgate-Palmolive manufactures and markets Palmolive® Ultra Pure + Clear® (unscented and Lavender & Eucalyptus varieties, together the "Pure + Clear Products") dish detergent products, which are labeled "PURE + CLEAR," "hypoallergenic," and as containing "NO UNNECESSARY Ingredients," despite the fact that they contain MI, along with the co-reactive chemicals benzisothiazolinone ("BI") and methylchloroisothiazolinone ("MCI").

3.      These affirmative representations, combined with the lack of an ingredients list or any disclosure of the presence of MI, BI, and MCI, falsely and misleadingly convey the impression that the Pure + Clear Products are unqualifiedly free from allergens and skin irritants, and without unnecessary ingredients.

## SUMMARY OF THE ACTION

4.      This is a proposed class action complaint brought on behalf of one class and one subclass (further defined *infra*): a class of consumers nationwide who purchased Defendant Colgate-Palmolive's Pure + Clear Products that contained MI and/or contained MI, BI, and MCI; and a subclass of Florida consumers who purchased Defendant's Pure + Clear Products that

contained MI and/or contained MI, BI, and MCI.

5.      Plaintiff Livingstone, on behalf of each of the class and the subclass, respectively, seeks injunctive and monetary relief, as set forth more fully below.

## PARTIES

6.      Plaintiff Amy Livingstone resides in Broward County, Florida. Within the past year, Plaintiff Livingstone has purchased Defendant's Pure + Clear Products at a Publix Supermarket located in Broward County, Florida. Plaintiff Livingstone made these purchases in reliance on the labeling of the products as "PURE + CLEAR," "hypoallergenic," and containing "NO UNNECESSARY Ingredients." Plaintiff understood these representations to mean that the Product was free from ingredients known to be skin allergens and/or skin irritants, and without any unnecessary ingredients that increase the likelihood of an allergic and/or irritating response. Plaintiff Livingstone would not have purchased, or would not have paid as much for, these products if she had known that the products contained a known skin irritant, contact allergen, and sensitizing agent.

7.      Defendant Colgate-Palmolive is a Delaware corporation and maintains its headquarters in New York, New York.

8.      Defendant Colgate-Palmolive distributes, markets and advertises the Pure + Clear Products in various media outlets, including online, throughout Florida and the United States.

## THE REPRESENTATIONS

9.      Defendant Colgate-Palmolive's choice to label the Pure + Clear Products as "PURE + CLEAR," "hypoallergenic," and as containing "NO UNNECESSARY Ingredients," creates consumer deception and confusion. Based on such representations, a reasonable consumer purchases these Pure + Clear Products believing that they are free from known allergens and irritants, especially unnecessary ones known to cause allergic reactions and to irritate skin.

10.     Reasonable consumers would not deem the Pure + Clear Products to be actually hypoallergenic, pure, or free from unnecessary ingredients if they knew the Products contained known allergens and skin irritants.

11.     Defendant Colgate-Palmolive has profited greatly from inducing consumers to buy the Pure + Clear Products instead of other dish detergents that are actually hypoallergenic, pure, and free from unnecessary ingredients. In fact, Defendant Colgate-Palmolive is able to sell more of, and charge a higher price for, its Pure + Clear Products because they are falsely labeled "hypoallergenic," "PURE + CLEAR," and free from "UNNECESSARY Ingredients."

## SUBSTANTIVE ALLEGATIONS

**I.      The "Non-Allergenic" Ultra Palmolive® Pure + Clear® Colgate-Palmolive Product.**

12.     Seeking to capitalize on consumers' increasing desire to locate and use gentle and non-irritating home-care products, Defendant's Ultra Palmolive® Pure + Clear® Colgate-Palmolive products display the words "pure + clear," "hypoallergenic" and/or "non-irritating" on the label.

13.     Defendant Colgate-Palmolive additionally markets the Pure + Clear Products with representations such as these:

> If clear and simple is how you and your family like things, then Palmolive Ultra Pure + Clear is the dish liquid for you. With no unnecessary ingredients, Pure + Clear is the simple cleaner that's tough on grease and gentle on your senses. Feel good about this dishwashing detergent knowing that Pure + Clear is hypoallergenic, effectively cuts grease and uses biodegradable cleaning ingredients.

https://www.palmolive.com/en-us/products/dish-washing-liquid/pure-clear (last visited May 20, 2019).

14.     The term "hypoallergenic" is commonly understood to mean "designed to reduce or minimize the possibility of an allergenic response, as containing relatively few or no potentially irritating substances," or "having a decreased tendency to provoke an allergic reaction." *See*

https://www.dictionary.com/browse/hypoallergenic (last visited May 20, 2019).

15.     Plaintiff and reasonable consumers understood the Product's label, taken as whole, to mean that it does not contain any ingredients that provoke or increase the likelihood of an allergic or irritating response.

16.     The packaging for the Pure + Clear Products misrepresents that the products will benefit consumers because they are not likely to cause, or reduce the provocation or likelihood to cause, an allergic or irritating reaction, and are therefore superior to other products on the market.

17.     Thus, the Pure + Clear Products are deceptively marketed as uniquely positioned, in contrast to other home-care dish soap products, to provide consumers with home-care products that will not cause allergic reactions.

**II.     Methylisothiazolinone.**

18.     The Pure + Clear Products contain methylisothiszolinone (2-methyl-4-isothiazolin-3-one, or "MI"), a powerful biocide used for controlling microbial growth in water-containing solutions.

19.     MI is produced, generally, by the controlled chlorination of dimethyldithiodipropionamide ("DPAM") in solvent, followed by neutralization and extraction into water.

20.     MI is an inexpensive and widely available synthetic biocidal preservative used for curbing microbial growth in water-containing solutions. As far back as the mid-1980s, MI was recognized as a contact allergen. *See, e.g.*, DeGroot, A.C., and Weyland, J.W., "Kathon CG: A Review," 18 *Journal of the American Academy of Dermatology* 350 (1988).

21.     Approximately 15 years ago, MI's use in the United States began to move from almost-exclusively industrial applications to household and cosmetic applications. Since then, MI's use has increased steadily in household and cosmetic applications.

22.     During the same period, reports of sensitivities and allergic reactions have skyrocketed. *See, e.g.*, Bouret, A.M. *et al.*, "Methylchloroisothiazolinone/methylisothiazolinone and methylisothiazolinone allergies can be detected by 200 ppm of methylchloroisothiazolinone/methylisothiazolinone patch test concentration," 25(3) *Dermatitis* 130-4 (May-June 2014).

23.     MI has been linked to what is called an "epidemic" of painful skin allergies, including rashes, blistering, swelling, redness, and hives. *See, e.g.*, "Incompetence and failure to regulate methylisothiazolinone," 72(6) *Contact Dermatitis* 353-54 (June 2015).

24.     The rapidly increasing rates of allergic reactions to MI resulted in the American Contact Dermatitis Society naming MI as the "contact allergen of the year" in 2013, *see* Castanedo-Tardana, M.P., and Zug, K.A., "Methylisothiazolinone," 24(1) *Dermatitis* 2-6 (Jan.-Feb. 2013), making its dangers well and generally known.

25.     MI is unusual, insofar as it is a sensitizing agent, meaning a consumer may be exposed to the preservative for years before sensitization occurs and an allergy erupts. Many of those who suffer from MI sensitivity search years before pinpointing the cause of their allergic reactions, and during that time have no way of knowing that they should be avoiding the preservative.

26.     Accordingly, exposure to MI increases and provokes the likelihood of an allergenic or irritating response – the opposite of what the label leads reasonable consumers to believe.

27.     There is currently no known cure for MI allergy once it erupts, and once an individual becomes sensitized, relapse of severe allergy becomes nearly unavoidable. *See, e.g.*, Bouschon, P., *et al.*, "Methylisothiazolinone allergic contact dermatitis: Assessment of relapses in 139 patients after avoidance advice," *Contact Dermatitis* (Jan. 17, 2019).

28.     Of the individuals who become sensitized to MI, a significant percentage are or will become cross-reactive to all thiazolinones, including BI and MCI.

29.     Various Facebook and other social-media groups now exist devoted to individuals suffering from MI sensitivity, aiming to raise awareness about the synthetic preservative's dangerous effects. Estimates of the percentage of consumers sensitized to MI are now as high as 10% of the population, or more.

## III.    The Label Misleads Consumers.

30.     No reasonable consumer would expect a product prominently labeled, on the front panel, as "hypoallergenic" to contain a chemical preservative and sensitizing agent such as MI, which is known to cause, and increase or provoke the likelihood of allergic reactions, or to contain cross-reactive isothiazolinones such as BI or MCI.

31.     No reasonable consumer would expect a product prominently labeled, on the front panel, as "PURE + CLEAR" to contain a chemical preservative and sensitizing agent such as MI, which is known to cause and increase or provoke the likelihood of allergic reactions, or to contain cross-reactive isothiazolinones such as BI or MCI.

32.     No reasonable consumer would expect a product prominently labeled, on the front panel, as containing "NO UNNECESSARY Ingredients" to contain a chemical preservative and sensitizing agent such as MI, which is known to cause, and increase or provoke the likelihood of severe allergic reactions, or to contain cross-reactive isothiazolinones such as BI or MCI.

33.     Importantly, on information and belief, other hand-dishwashing detergents manufactured and distributed by Defendant Colgate-Palmolive that are not labeled "PURE + CLEAR" or "hypoallergenic" do ***not*** contain MI, MCI, or BI, while the Products with "NO UNNECESSARY Ingredients" ***do*** contain MI, MCI, and BI.

34.     Despite making the above affirmative representations, nowhere does the packaging of the Pure + Clear Products—neither the front label of the packaging, which makes unqualified "hypoallergenic" claims, nor the back label of the packaging—reveal that the Products contain MI, MCI, and BI, or the nature of these chemical allergens.

35.     Moreover, despite its "hypoallergenic" claims, Defendant does not reveal that the products contain at least one ingredient linked to allergic reactions, dermatitis and other skin irritation. A reasonable consumer does not consider such an ingredient to be hypoallergenic.

36.     Defendant Colgate-Palmolive's representations that the Pure + Clear Products are "hypoallergenic," are "PURE + CLEAR," and contain "NO UNNECESSARY Ingredients" are false, deceptive, and misleading.

37.     Because Defendant Colgate-Palmolive has made the affirmative claims at issue, it has engaged in additional unlawful conduct by and through its failure to disclose material information regarding those claims, including the known hazards of exposure to the MI contained in the Products. Where, as here, a significant proportion of the population already suffers from allergic reactions to a known sensitizing agent contained in a consumer product, the manufacturer must fully disclose the properties of that chemical.

38.     Plaintiff Livingstone and members of the Class and the Subclass have suffered an injury in fact and have lost money or property because they purchased, and paid more for, or purchased more of, the Pure + Clear Products as a direct result of Colgate-Palmolive's false, misleading, deceptive, and unfair representations.  Had Plaintiff Livingstone and the Class and Subclass members known the true nature of the Pure + Clear Products, they would not have purchased them, would not have paid as much for them, or would have purchased fewer of them.

39.     Plaintiff Livingstone and members of the Class and Subclass have suffered an injury in fact and have lost money or property because they purchased, and paid more for, or

purchased more of, the Pure + Clear Products as a direct result of Defendant Colgate-Palmolive's failure to warn that the products contained a contact allergen. Had Plaintiff Livingstone and the Class and Subclass members known the true nature of the Pure + Clear Products, they would not have purchased them, would not have paid as much for them, or would have purchased fewer of them.

40.     Defendant Colgate-Palmolive has profited enormously from false and misleading representations that the Pure + Clear Products are "hypoallergenic" and "PURE + CLEAR" and contain "NO UNNECESSARY Ingredients." The purpose of this action is to put an end to Defendant Colgate-Palmolive's deceptive marketing of the Pure + Clear Products and to provide consumers with information regarding the allergenic properties of the chemicals contained within the Products, and monetary relief for Defendant Colgate-Palmolive's unfair profits stemming from its deceptive and misleading product claims.

41.     Plaintiff Livingstone and other members of the Class and Subclass will continue to suffer injury if Defendant Colgate-Palmolive's deceptive conduct is not enjoined. Plaintiff Livingstone would like to continue purchasing the Pure + Clear Products in the future. But as a result of Defendant Colgate-Palmolive's wrongful acts, Plaintiff Livingstone and other reasonable consumers can no longer rely on the truth and accuracy of Defendant Colgate-Palmolive's Products. Absent an injunctive order, Plaintiff Livingstone and other reasonable consumers are prevented from making a meaningful and informed choice and are otherwise at continued risk of real and immediate threat of repeated injury, including purchasing deceptively labeled and packaged Products sold at prices above their true market value.

## JURISDICTION AND VENUE

42.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that (1) this is a class action involving more than 100 class members;

(2) Plaintiff Livingstone proposes a nationwide class action, while Defendant Colgate is a citizen of the State of Delaware with its principal place of business in the State of New York; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

43.     This Court has personal jurisdiction over the parties in this case. Plaintiff Livingstone is a citizen of Florida residing in Broward County. Defendant Colgate-Palmolive is a corporation headquartered in this District that conducts and transacts business throughout the United States, including in New York and in this District.

44.     Pursuant to 28 U.S.C. section 1391(a), venue is proper in this District because substantial acts in furtherance of the alleged improper conduct, including the creation and dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Pure + Clear Products, occurred within this District. No States' interest is greater than the State of New York in resolving this dispute.

## CLASS ALLEGATIONS

45.     Plaintiff Livingstone brings this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following Class and Subclass:

(1)     **All consumers nationwide ("Class") who purchased the Pure + Clear Products during the applicable liability period for their personal use, rather than for resale or distribution.**

(2)     **All consumers in Florida ("Florida Subclass") who purchased the Pure + Clear Products during the past 4 years, for their personal use, rather than for resale or distribution.**

46.     Excluded from the Class and Subclass are (1) Defendant Colgate-Palmolive, any entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

47.     The requirements of Federal Rule of Civil Procedure 23 are satisfied:

A.     <u>Numerosity</u>: The members of the Class and the Subclass are so numerous that joinder of all members is impracticable. While the exact number of class members is currently unknown to Plaintiff Livingstone, based on Defendant Colgate-Palmolive's volume of sales, Plaintiff Livingstone estimates that the number for each class is in the thousands, if not more.

B.     <u>Commonality</u>: There are questions of law and fact that are common to the class members and that predominate over individual questions, and therefore, the requirements of Rule 23(b)(3) are met. The common questions of law and fact include the following:

  i. Whether Defendant Colgate-Palmolive materially misrepresented, either through express or implied representations, to the Class and Subclass members that the Pure + Clear Products are "hypoallergenic";

  ii. Whether Defendant Colgate-Palmolive materially misrepresented, either through express or implied representations, to the Class and Subclass members that the Pure + Clear Products are "PURE + CLEAR";

  iii. Whether Defendant Colgate-Palmolive materially misrepresented, either through express or implied representations, to the Class and Subclass members that the Pure + Clear Products contain "NO UNNECESSARY Ingredients";

  iv. Whether Defendant Colgate-Palmolive failed to warn of the presence of a dangerous contact allergen in the Pure + Clear Products;

  v. whether Defendant Colgate-Palmolive misrepresented and/or failed

to disclose material facts concerning the Products;

vi.    Whether Defendant Colgate-Palmolive's misrepresentations and omissions were material to reasonable consumers;

vii.   Whether Defendant Colgate-Palmolive's labeling, marketing, and sale of the Products constitutes unfair or deceptive conduct;

viii.  Whether Defendant Colgate-Palmolive's failure to warn of the presence of MI in the Products constitutes actionable misconduct;

ix.    Whether Defendant Colgate-Palmolive's conduct described above constitutes a breach of warranty;

x.     Whether Defendant Colgate-Palmolive was unjustly enriched owing to its iniquitous conduct;

xi.    Whether Defendant Colgate-Palmolive's conduct injured consumers and, if so, the extent of the injury; and

xii.   The appropriate remedies for Defendant Colgate-Palmolive's conduct.

With respect to the Florida Sub-Class, additional questions of law and fact common to the members predominate over questions that may affect individual members, including whether Defendant Colgate Palmolive's practices and representations related to the marketing, labeling, and sales of the Pure + Clear Products in Florida were unfair, deceptive, fraudulent, and/or unlawful in any respect, thereby violating Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201, *et seq.*

C.     <u>Typicality</u>: Plaintiff Livingstone's claims are typical of the claims of the class because Plaintiff Livingstone suffered the same injury as the class members—*i.e.*, Plaintiff Livingstone purchased Pure + Clear Products based on Defendant Colgate-Palmolive's misleading

representations and omissions about the qualities of those Products.

D.    Adequacy: Plaintiff Livingstone will fairly and adequately represent and protect the interests of the members of the Class and the Subclass. Plaintiff Livingstone does not have any interests that are adverse to those of the Class members or Subclass members. Plaintiff Livingstone has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

E.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

48.    The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant Colgate-Palmolive has acted or refused to act on grounds generally applicable to each class, thereby making appropriate final injunctive or equitable relief with respect to each class as a whole.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class)**

49.    Plaintiff Livingstone repeats the allegations in the foregoing paragraphs numbered 1 through 48 as if fully set forth herein.

50.     Plaintiff Livingstone brings this Cause of Action individually and on behalf of the members of the Class.

51.     Defendant Colgate-Palmolive expressly and impliedly warrants in its marketing, labeling, and promotion of the Pure + Clear Products that they are "hypoallergenic" and "PURE + CLEAR" and that they contain "NO UNNECESSARY Ingredients." These statements are untrue as detailed above. These promises specifically relate to the goods being purchased and became the basis of the bargain.

52.     Moreover, Plaintiff Livingstone and members of the Class and the Subclass purchased the Pure + Clear Products based upon express warranties made in Defendant Colgate-Palmolive's marketing and labeling. Defendant Colgate-Palmolive breached its express warranty by selling Pure + Clear Products that did not conform to the warranties made.

53.     Plaintiff Livingstone and members of the Class and the Subclass were injured as a direct and proximate result of Defendant Colgate-Palmolive's breach and must to be compensated for the damages they suffered. If Plaintiff Livingstone and members of the Class and the Subclass had known the true facts concerning the potent allergen content of Pure + Clear Products, they would not have purchased them.

54.     Defendant Colgate-Palmolive breached its express warranties because, as alleged above, the Products contain MI and other cross-reactive chemicals, and are therefore neither "hypoallergenic" nor "PURE + CLEAN" nor with "NO UNNECESSARY Ingredients." Defendant Colgate-Palmolive breached the following state warranty laws:

Ala. Code. section 7-2-313;

Alaska Stat. section 45.02.313;

A.R.S. section 47-2313;

A.C.A. section 4-2-313;

Cal. Comm. Code section 2313;

Colo. Rev. Stat. section 4-2-313;

Conn. Gen. Stat. section 42a-2-313;

6 Del. C. section 2-313;

D.C. Code section 28:2-313;

Fla. Stat. section 672.313;

O.C.G.A. section 11-2-313;

HRS section 490:2-313;

Idaho Code section 28-2-313;

810 ILCS 5/2-313;

Ind. Code section 26-1-2-313;

Iowa Code section 554.13210;

K.S.A. section 84-2-313;

KRS section 355.2-313;

11 M.R.S. section 2-313;

MD Comm. L. Code section 2-313;

Mass. Gen. Laws Ann. ch. 106 section 2-313;

MCL section 440.2313;

Minn. Stat. section 336.2-313;

Miss. Code Ann. section 75-2-313;

R.S. Mo. Section 400.2-313;

Mont. Code Anno. Section 30-2-313;

Neb. Rev. Stat. section 2-313;

Nev. Rev. Stat. Ann. section 104.2313;

NH Rev. Stat. section 382-A:2-313;

N.J. Stat. Ann. section 12A:2-313;

N.M. Stat. Ann. section 55-2-313;

N.Y. U.C.C. Law section 2-313;

N.C. Gen. Stat. section 25-2-313;

N.D. Cent. Code section 41-02-30;

ORC Ann. section 1302.26;

12A Okl. St. section 2-313;

Or. Rev. Stat. section 72-3130;

13 Pa.C.S. section 2313;

R.I. Gen. Laws section 6A-2-313;

S.C. Code Ann. section 36-2-313;

S.D. Codified Laws, section 57A-2-313;

Tenn. Code Ann. section 47-2-313;

Tex. Bus. & Com. Code section 2.313;

Utah Code Ann. section 70A-2-313;

9A V.S.A. section 2-313;

Va. Code Ann. section 59.1-504.2;

Wash. Rev. Code Ann. section 62A.2-313;

W. Va. Code section 46-2-313;

Wisc. Stat. section 402-313; and

Wyo. Stat. section 34.1-2-313.

55.     As a result of Defendant Colgate-Palmolive's breaches of warranty, Plaintiff

Livingstone and the other members of the Class and the Subclass were damaged, in amounts to be

proven at trial.

56.     Within a reasonable time after she knew or should have known of such breach, Plaintiff Livingstone, on behalf of herself and the other members of the Class and Subclass, placed Defendant Colgate-Palmolive on notice thereof.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

57.     Plaintiff Livingstone repeats the allegations in the foregoing paragraphs numbered 1 through 48 as if fully set forth herein.

58.     Plaintiff Livingstone brings this cause of action individually and on behalf of members of the Class.

59.     Plaintiff Livingstone pleads this cause of action for unjust enrichment in the alternative to her cause of action for breach of express warranty, in the event that no express warranty is found to exist.

60.     Plaintiff Livingstone and the members of the Class conferred benefits on Defendant Colgate-Palmolive by purchasing the Pure + Clear Products.

61.     Defendant Colgate-Palmolive has knowledge of such benefits.

62.     Defendant Colgate-Palmolive has been unjustly enriched in retaining the revenues derived from Plaintiff Livingstone's and Class members' purchases of the Pure + Clear Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant Colgate-Palmolive falsely and misleadingly represents that the Pure + Clear Products do not contain a potent contact allergen and sensitizing agent, MI, along with additional cross-reactive chemicals.

63.     Because Defendant Colgate-Palmolive's retention of the non-gratuitous benefits conferred on it by Plaintiff Livingstone and the members of the Class is unjust and inequitable,

Defendant Colgate-Palmolive must pay restitution to Plaintiff Livingstone and members of the Class for its unjust enrichment, as ordered by the Court.

**THIRD CAUSE OF ACTION**
**Violation of Florida Deceptive and Unfair Trade Practices Act**
**(On Behalf of the Florida Subclass)**

64.     Plaintiff Livingstone repeats the allegations in the foregoing paragraphs numbered 1 through 48 as if fully set forth herein.

65.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq*. The express purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

66.     The sales of Pure + Clear Products in Florida constitute "consumer transactions" within the scope of the FDUTPA.

67.     Fla. Stat. § 501.204(1) declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

68.     Defendant Colgate-Palmolive's unfair and deceptive practices as described in this Complaint are likely to mislead—and have misled—the consumer acting reasonably under the circumstances and, therefore, violate the FDUTPA

69.     Defendant Colgate-Palmolive has violated the FDUTPA by engaging in the unfair and deceptive practices described in this Complaint, which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers. Specifically, Defendant Colgate-Palmolive has misrepresented the true nature of the Pure + Clear Products and, given those misrepresentations, has failed to reveal the presence and effects of MI and other cross-reactive

chemicals in the Pure + Clear Products, thereby disseminating representations or omissions that are false, deceptive, and likely to mislead a reasonable consumer, such as Plaintiff Livingstone and members of the Florida Subclass.

70.     Defendant Colgate-Palmolive misrepresented and/or omitted facts about the nature of the Pure + Clear Products, which were and are material to the decisions of Plaintiff Livingstone and the Subclass members when deciding to purchase the Pure + Clear Products.

71.     Defendant Colgate-Palmolive's sale of the Pure + Clear Products, as formulated and labeled, is an unfair method of competition, unconscionable act and practice, and an unfair and deceptive act and practice in the conduct of its business.

72.     As a result of Defendant Colgate-Palmolive's deceptive and unfair acts, Plaintiff Livingstone and the members of the Subclass have been damaged from the past four years through the date of notice to the class.

73.     Defendant Colgate-Palmolive's conduct offends established public policy, and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

74.     Defendant Colgate-Palmolive should be ordered to cease its deceptive and unfair labeling and advertising, and should be made to engage in a corrective advertising campaign, to inform consumers of the true nature of the Pure + Clear Products.

## <u>PRAYER FOR RELIEF</u>

Plaintiff Livingstone, on her own behalf and on behalf of the Class and the Florida Subclass, prays for the following relief:

A.     For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Livingstone as Class Representative and her attorneys as Class Counsel;

B.     For an order declaring that Defendant Colgate-Palmolive's conduct violates the statutes referenced herein;

C.     For an order finding in favor of Plaintiff Livingstone and the Class and Florida Subclass on all counts asserted herein;

D.     For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.     For injunctive relief as pleaded or as the Court may deem proper; and

H.     For an order awarding Plaintiff Livingstone and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff Livingstone hereby demands a trial by jury.

Dated: May 20, 2019

Respectfully submitted,

**RICHMAN LAW GROUP**

Kim E. Richman
8 West 126th Street
New York, NY 10027
(718) 705-4579 (t)
(718) 228-8522 (f)
Email: krichman@richmanlawgroup.com

**EGGNATZ PASCUCCI, P.A.**
Joshua H. Eggnatz, Esq.
7450 Griffin Road, Suite 230
Davie, Florida 33314
Telephone: (954) 889-3359
Email:  JEggnatz@JusticeEarned.com

*Attorneys for Plaintiff Livingstone and the*
*Proposed Class and Subclass*